IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **KRISTOPHER PICASO, ID # 1746781,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | No. 3:12-CV-1305-L-BH |
| ) | |
| **DANIEL WISDOM, et al.,** ) | |
| **Defendants.** ) | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to Special Order 3-251, this *pro se* prisoner civil rights case has been automatically referred for pretrial management. Before the Court is *Defendants' Motion for Summary Judgment Based on Qualified Immunity*, filed March 8, 2013 (doc. 34). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

### I. BACKGROUND

On March 12, 2012, Kristopher Picaso (Plaintiff) filed this civil rights action under 42 U.S.C. § 1983 against Kaufman County detention officers Daniel Wisdom (Wisdom), Nick Julian (Julian), and Corporal John-Paul Caballero (Caballero) (collectively Defendants).[1] (Compl. at 3, 5). He claims that Defendants used excessive force against him on October 28, 2011, while he was detained at the Kaufman County jail. (Compl. at 2-3, Second Magistrate Judge's Questionnaire "2nd MJQ" Ans. 2, 3, 4e). He seeks monetary damages and disciplinary action against Defendants. (1st MJQ Ans. 9).[2] Defendants move for summary judgment, asserting the defense of qualified immunity.

---

[1] Plaintiff originally also named Captain Lori Compton and Chief Stone as defendants, but he subsequently clarified that he did not intend to sue them, and they were dismissed from the suit. (*See* docs. 13, 14.)

[2] Plaintiff's answers to the questionnaire constitute an amendment to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

(docs. 34, 35). Plaintiff did not respond to the motion for summary judgment.[3]

It is undisputed that Plaintiff was a pretrial detainee at the Kaufman County jail on October 28, 2011. (2nd MJQ Ans. 1; Motion for Summary Judgment Appendix ("MSJ Appx."), Ex. 1 (doc. 36)). Plaintiff avers that on that date, he was walking down a hallway of the jail in handcuffs when Caballero grabbed him by the throat, slammed him against the wall, and continued to choke him until he almost passed out. He claims that Wisdom and Julian witnessed this assault but did not report it, and that they instead taunted him and dragged him down the hallway while he was handcuffed. (Compl. at 2-3, 2nd MJQ Ans. 2, 3, 4). Plaintiff claims that these assaults were unprovoked, caused extreme pain in his throat, neck, and back, and made it almost impossible for him to swallow food for 5-6 days. (2nd MJQ Ans. 1-4, 7, 8).

Defendants submit a sworn affidavit from Caballero. It avers that at approximately 10:25 a.m. on October 28, 2011, he escorted Plaintiff outside for recreation time, during which he and Julian conducted a routine search of Plaintiff's cell and removed a blanket. When Plaintiff returned and realized his cell had been searched, he became upset and began acting aggressively towards Caballero and Julian. After warning Plaintiff that aggressive conduct would not be tolerated, and agreeing to retrieve another blanket for him if he provided a pass for it, Caballero believed that he saw an unknown object in Plaintiff's hand. Caballero and Julian then entered Plaintiff's cell and searched him but did not find anything. They handcuffed him and placed him in a neighboring cell while they again searched his cell. When Plaintiff was returned to his cell, he acted aggressively towards the officers again, and Caballero again warned Plaintiff about his behavior. (MSJ Appx.,

---

[3] Plaintiff's sworn complaint and questionnaire answers may serve as competent summary judgment evidence to the extent that they comport with the requirements of Fed. R. Civ. P. 56. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994).

Ex. 1 (doc. 36)).

Approximately one hour later, Julian and another inmate attempted to give Plaintiff a lunch tray while Caballero was supervising, and Caballero saw Plaintiff attempt to throw the tray towards Julian. After lunch ended, Julian informed Caballero that Plaintiff was to be moved to another section of the jail because of his behavior. Wisdom, Julian, and Caballero escorted Plaintiff to his next cell while he carried his belongings in a crate. When Plaintiff refused to carry the crate any further, the officers handcuffed him, and Plaintiff began kicking the crate down the hallway. At one point, when Julian leaned down to pick up the crate, Caballero believed that Plaintiff was making a move to kick Julian instead of the crate. Caballero then grabbed Plaintiff with one hand at his throat and one behind his back to stabilize him. He released his grip after a few seconds but continued to keep his hand there while the officers again explained to Plaintiff that he had been warned about aggressive movements towards them. After it appeared that Plaintiff would not attempt anything further, they escorted him to his new cell without incident. (MSJ Appx., Ex. 1 (doc. 36)).

Defendants have submitted three DVDs of video recordings, without audio, from that day. The DVDs do not show what happened in Plaintiff's cell. The first DVD shows Plaintiff being escorted down the hallway, two officers then entering his cell and removing some items, Plaintiff returning a few minutes later, officers again entering his cell while Plaintiff was in it, Plaintiff being moved to a neighboring cell while officers remained in his cell, and Plaintiff returning to his cell. The second DVD shows events that occurred approximately one hour later, including a lunch tray being handed to Plaintiff through his cell door and then being quickly removed, Plaintiff later being escorted down the hallway by the three officers while he carried a crate, and the group then pausing

3

for a few moments at the end of the hallway, just out of view of the camera. The third DVD shows a handcuffed Plaintiff walking between the officers shortly after the group paused at the end of the previous hallway, now kicking the crate. One officer bends down towards the floor near the crate, Plaintiff moves in one direction, and another officer quickly grabs and pushes Plaintiff against the wall with one hand on his neck. The three officers then surround Plaintiff, appearing to speak to him. Approximately 30 seconds after Plaintiff was pushed against the wall, one of the officers picks up the crate, and the group proceeds down the hallway. The video does not show Plaintiff being dragged down the hallway or being choked by an officer. (*See* MSJ, Ex. B-2(a), B-2(b), B-2(c)).

## II.  SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v.*

4

*Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).[4] Although courts view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'", *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

Here, Defendants have carried their summary judgment burden by asserting their qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden now shifts to Plaintiff to produce evidence showing that the defendants violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).

### III. QUALIFIED IMMUNITY

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity pro-

---

[4] Courts generally liberally construe a *pro se* plaintiff's pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). They have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment", however. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

tects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, court consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

As a pretrial detainee at the time of the alleged incidents, Plaintiff's excessive force claims arise under the Due Process Clause of the Fourteenth Amendment. *See Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). In an excessive force case, the "core judicial inquiry" is "whether force

6

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *accord Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (emphasizing that the inquiry is "not whether a certain quantum of injury was sustained"). This inquiry has two components – an objective one that focuses on whether the alleged wrongdoing was harmful enough to violate the Constitution and a subjective one that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8.

When considering the objective component, courts must look to the nature of the force used, and "whether it was nontrivial," not the extent of the injury sustained. *Wilkins*, 130 S. Ct. at 1179 & n.2; *accord Hudson*, 503 U.S. at 8-10. Excessive force "necessarily excludes . . . *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted).

Because there is often no specific evidence of the official's subject intent, the subjective component may require consideration of objective factors, including (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; (5) any efforts to temper the severity of a forceful response; and in some cases, (6) a need "to act quickly and decisively." *Valencia*, 981 F.2d at 1446-47 & n.2; *Wilkins*, 130 S. Ct. at 1178 (noting that the extent of the injury is a factor as to whether the officers could have plausibly thought the force was necessary in the given situation and an indicator of the amount of force applied). These factors are "not exclusive; each case must be judged on its own facts." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). When there is no legitimate purpose for the officers' conduct, malicious and sadistic intent may be inferred from their conduct alone. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152

(10th Cir. 2006).

Plaintiff's sworn complaint and questionnaire answers aver that Defendants used excessive force by choking him to near unconsciousness and by dragging him down a hallway in handcuffs. The DVD recordings of the events show that Plaintiff was not dragged down a hallway in handcuffs. He was grabbed by the neck by one of the defendants and pushed against the wall briefly, but he was not slammed against the wall or choked, and he showed no injury from the incident immediately afterwards when he continued walking down the hallway. While the videos do not show what happened in Plaintiff's cell, they support Caballero's version of events as to what occurred in the hallways of the jail. The events in the hallway are the only basis for Plaintiff's claims.

Generally, the evidence must be viewed in the light most favorable to the nonmoving party if there is a *genuine* dispute as to the facts. In *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), however, the plaintiff's version of events was contradicted by a videotape of the relevant events. The Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. The court could instead rely on the videotape of the events in evaluating the motion for summary judgment rather than the "visible fiction" offered by the non-moving party. *Id*. at 381.

As in *Scott*, Plaintiff's version of how Caballero slammed him against the wall and choked him to the point of unconsciousness without provocation and Julian and Wisdom taunted him and dragged him down the hallway is "blatantly" contradicted by the DVDs. It may therefore be disregarded under *Scott*. Plaintiff has not alleged facts that contradict Caballero's sworn assertions that throughout that same day, he acted aggressively towards Defendants on several occasions. Based

8

on these uncontradicted sworn assertions and the DVDs, Defendants reacted quickly and decisively in a good-faith effort to maintain or restore discipline rather than to maliciously and sadistically to cause harm. Plaintiff has not shown that the evidence is sufficient to support a resolution in his favor of the factual issue of whether Defendants violated his constitutional rights by using excessive force. Defendants are therefore entitled to qualified immunity with regard to Plaintiff's claims against them.

## IV. CONCLUSION

Defendants' summary judgment motion should be **GRANTED**, and all of Plaintiff's claims against them should be dismissed with prejudice on the basis of qualified immunity.

**SO RECOMMENDED** on this 26th day of December, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE